Samuel W. BROWN, M.D., Plaintiff,

David Neely, Appellant,

v.

FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES; Educational Commission for Foreign Medical Graduates; and The National Board of Medical Examiners, Defendants-Appellees.

No. 86–2652.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1987.

Decided Sept. 22, 1987.

Rehearing and Rehearing En Banc Denied Nov. 18, 1987.

---

Bruce H. Bornstein & Alan M. Freedman, Freedman & Bornstein, Chicago, Ill., for appellant.

Helen E. Witt, Kirkland & Ellis, Chicago, Ill., for defendants-appellees.

Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

The appellant, David Neely, appeals from the district court's order imposing sanctions against him pursuant to Rule 11 of the Federal Rules of Civil Procedure. The district court's order required Neely, an attorney, to pay the three defendants over $30,000 in attorneys' fees. On appeal, Neely argues that Rule 11 sanctions should not have been granted, and that, even if it was proper for the district court to award sanctions, the court abused its discretion by granting such a large award. We conclude that, although the district court was correct in imposing sanctions, the absence of an appropriately specific award requires a remand of this case for a redetermination of sanctions.

I.

Samuel Brown, M.D., the named plaintiff, received his medical education from the University of Graz, Austria. Brown attempted to pass various state licensing exams thirteen times between 1975 and 1982. These exams were administered under the auspices of the defendants. *See Brown v. National Board of Medical Examiners,* 800 F.2d 168, 169 (7th Cir.1986). Despite his studying, however, Brown never passed the exams. *See id.*

Apparently, Brown became convinced that the "testing organizations were engaged in some form of statistical manipulation." *Id.* Brown pursued several nonlegal channels seeking relief. *Id.* However, he soon became frustrated with these nonlegal routes. Consequently, on December 2, 1982, Brown, with the aid of an attorney, Toole, filed a complaint against the defendants in federal court. Brown, a black man, was 51 years old at the time he filed this complaint. The complaint alleged violations of equal protection and due process, and alleged discrimination against medical school graduates over 35 years old. Brown requested review of his exams, including his test booklet. However, in June, 1983, the district court dismissed the complaint for want of prosecution.

The next month, the district court reinstated the complaint. At the pretrial conference, the defendants informed Brown that his test booklet had been destroyed during the ordinary course of business. *Id.* at 170. The defendants offered to allow Brown to review his answer sheets and compare them to the master answer key. "Brown found this approach unacceptable, because he contended that the booklets did still in fact exist and the booklets provided proof of his correct answers." *Brown v. Federation of State Medical Boards,* No. 82 C 7398, slip op. at 3 (N.D.Ill. May 31, 1985) (footnote omitted) (memorandum opinion).

Brown then filed an amended complaint, which he signed. Toole, however, did not sign this amended complaint which alleged "various constitutional deprivations and

prayed for millions of dollars in damages." *Brown,* 800 F.2d at 170. At this point, Toole withdrew as Brown's counsel. Brown immediately retained new counsel, Walker. Walker, however, withdrew one month later.

On March 30, 1984, David Neely appeared on Brown's behalf for the first time. Neely filed a second amended complaint. In the second amended complaint, Neely added claims of race discrimination, and violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34 (1982 & Supp. III 1985). The second amended complaint contained nine related claims:

> (1) intentional racial discrimination; (2) intentional age discrimination; (3) violation of due process; (4) violation of the Privileges and Immunities Clause and equal protection; (5) violation of ADEA; (6) violation of 42 U.S.C. § 1981; (7) violation of 42 U.S.C. § 1983; (8) violation of plaintiff's right to travel, right to contract and freedom of expression; and (9) intentional infliction of emotional distress.

*Brown,* No. 82 C 7398, slip op. at 4–5.

Neely soon became concerned that important documentary evidence would be altered or destroyed. Consequently, he filed an emergency motion to produce documents and have them placed under the court's seal. The district court held a hearing to determine the basis of Neely's request. The district court concluded that the motion was groundless, and assessed attorney's fees of $2,538 against Neely. On appeal, we affirmed this award of attorney's fees. *Brown v. National Board of Medical Examiners,* 800 F.2d 168 (7th Cir. 1986).

The district court, in the same order in which it sanctioned Neely for filing the emergency motion, dismissed the second amended complaint. The court dismissed the § 1983 causes of action because it concluded that there was no state action on the part of the defendants. The district court reasoned that the defendants were not state agencies and did not license the physicians; rather, the defendants only supplied a service used by state licensing boards and examinees. The district court dismissed the § 1981 claims because Brown neither identified the contract that formed the basis of the § 1981 claim nor alleged either intent or any type of actionable activity. The district court dismissed the ADEA claims because, *inter alia,* Brown had failed to file a complaint with the Equal Employment Opportunity Commission. Finally, the district court dismissed the state claims, declining to exercise its pendent jurisdiction. The district court dismissed the ADEA claims and the § 1983 claims with prejudice. However, the court provided Brown an opportunity to amend the § 1981 counts within 30 days.

After dismissing the complaint, the district court discussed the possibility of sanctions. The court noted that the ADEA claims had no basis in the law, and that the § 1983 claims suffered from "legal infirmities." The district court did not at that time, however, make a finding as to whether the § 1983 claims were unreasonable. Finally, the court noted that if no facts existed to warrant the § 1981 claims, then an amendment of these claims might be sanctionable.

Brown decided not to amend his § 1981 claims. Subsequently, on April 29, 1986, the district court ruled on the defendants' petitions for fees. The district court concluded that Neely's action in filing the second amended complaint was unreasonable, and that the defendants were entitled to their attorneys' fees for defending against that second amended complaint. The court first reviewed the petition of the National Board of Medical Examiners ("National"). The court reduced the billing rates of one of National's attorneys from $140 and $150 per hour to $100 per hour; the court approved the $80 and $85 per hour rates of the other attorney. The court, without making any determination as to the amount of hours that National's attorneys spent defending each count of the second amended complaint, concluded that the time spent was "reasonable" and awarded fees in the amount of $7,281.30. Under the court's order, Brown and Neely were jointly and

severally liable for the award. The court found, however, that the fee petition of the Educational Commission for Foreign Medical Graduates, Inc. ("Commission") and the Federation of State Medical Boards ("Federation") were lacking in specificity. The court, therefore, ordered these two parties to file more detailed petitions. They subsequently filed revised fee petitions.

On July 24, 1986, the district court issued another memorandum order. The court first considered both Brown and Neely's objections to the Rule 11 sanctions. One of Neely's objections to the fee petitions was his inability to pay the sanction. The district court rejected this claim, finding that although Neely's expenses exceeded his income, he would be able to spread his payments over time. *Brown*, No. 82 C 7398, slip op. at 10. The court refused to consider other equitable factors, such as the wealth of the defendants and Neely's inexperience, because the court believed that "the Seventh Circuit does not find equitable factors relevant, save perhaps a sanctioned party's indigency." *Id.*

The district court then considered Commission's and Federation's revised fee petitions. Federation had requested $41,-359.91. The court disallowed $641 in fees attributable to the first amended complaint. The district court also found that Federation's "petition include[d] excessive time for conferring, both among Federation's own counsel and with counsel for the other

defendants." *Id.* at 7. The court reduced Federation's fee request from over $40,000 to $20,000, and concluded that Neely was jointly and severally liable for $15,000 of the $20,000 in fees awarded to Federation. The court further concluded that Neely was jointly and severally liable to Commission for fees attributable to the second amended complaint in the amount of $8,278.75. Thus, Neely was jointly and severally liable for $7,281.30 to National, $15,000 to Federation, and $8,278.75 to Commission. The district court did not assess costs against Neely. Final judgment was entered on these fee amounts, with interest, and Neely filed a timely notice of appeal.

## II.

Rule 11 of the Federal Rules of Civil Procedure provides that if an attorney files pleadings that are not reasonably based on the law or in fact, or that are meant to harass, then "the court upon motion or upon its own initiative, *shall* impose ... an appropriate sanction." Fed.R.Civ.P. 11 (emphasis added); *see Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1130 (5th Cir.1987).[1] If the district court concludes that the motion, pleading, or other document was not well-grounded in fact or warranted by the existing law, or was meant to harass, then the court must impose a sanction. *See, e.g., Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d

1. Rule 11 provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
Fed.R.Civ.P. 11.

1073, 1082 (7th Cir.1987); *Thomas v. Capital Security Services, Inc.*, 812 F.2d 984, 989 (5th Cir.1987); *Shrock v. Altru Nurses Registry*, 810 F.2d 658, 661 (7th Cir.1987); *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540 (9th Cir.1986) (*citing Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 n. 7 (2d Cir.1985)); *cf. In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir.1985)) ("Rule 11 was amended in 1983 to make it easier for a court to award fees, indeed perhaps to make the award mandatory in some cases.").[2]

Our review of an order granting or denying Rule 11 sanctions involves several discrete inquiries. First, we must consider whether the district court correctly imposed sanctions. We review findings of fact that the district court used to determine whether Rule 11 was violated under the clearly erroneous standard. *See, e.g., Kurkowski v. Volcker*, 819 F.2d 201, 203 n. 8 (8th Cir.1987); *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir.1987); *Robinson*, 808 F.2d at 1126; *Golden Eagle*, 801 F.2d at 1538. However, we review *de novo* the district court's legal conclusion that conduct in a particular case constituted a violation of Rule 11. *See, e.g., Szabo Food Service, Inc.*, 823 F.2d 1073 (applying *de novo* standard without discussion); *Kurkowski*, 819 F.2d at 203 n. 8; *Zuniga*, 812 F.2d at 452; *Robinson*, 808 F.2d at 1126; *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists*, 802 F.2d 247 (7th Cir.1986) (applying *de novo* standard without discussion); *Golden Eagle*, 801

F.2d at 1538. *Cf. Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987) (*en banc*) ("Whether (1) factual or (2) dilatory or bad faith reasons exist to impose Rule 11 sanctions is for the district court to decide subject to review for abuse of discretion ... [A] decision whether a pleading or motion is legally sufficient involves a question of law subject to *de novo* review by this court." (footnote omitted) (*citing Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174–75 (D.C.Cir.1985)).[3]

Second, we must consider whether the sanction the district court chose to impose was appropriate. "The amount or type of sanction imposed is within the district court's discretion." *Thomas*, 812 F.2d at 989. Therefore, we will reverse a district court's choice of an amount or a type of sanction only if we find an abuse of discretion. *See Cheek v. Doe*, 828 F.2d 395, 397 (7th Cir.1987) (per curiam); *accord Donaldson*, 819 F.2d at 1557; *Zuniga*, 812 F.2d at 452; *Robinson*, 808 F.2d at 1126; *Golden Eagle*, 801 F.2d at 1538.

We first discuss what constitutes a violation of Rule 11. Then, following the two-step analysis outlined above, we conclude that the district court was correct in imposing sanctions against Neely. We must then determine whether the district court's award constituted an abuse of discretion by failing to adequately specify the basis for the sanctions. We conclude that such an abuse of discretion occurred in this case, and therefore remand the case for further proceedings.

---

**2.** We agree with the Ninth Circuit that:
 Nothing in the language of the Rule or the Advisory Committee Notes supports the view that the Rule empowers the district court to impose sanctions on lawyers simply because a particular argument or ground for relief contained in a non-frivolous motion is found by the district court to be unjustified. In short, the fact that the court concludes that one argument or sub-argument in support of an otherwise valid motion, pleading, or other paper is unmeritorious does not warrant a finding that the motion or pleading is frivolous or that the Rule has been violated.
 *Golden Eagle*, 801 F.2d at 1540–41.

**3.** We note that there appears to be a split in this circuit regarding whether the decision to award

sanctions is a question of law and subject to *de novo* review, because the rule contains mandatory language, or whether the decision to impose sanctions is subject to an abuse of discretion standard. *Compare Szabo Food Service, Inc.*, 823 F.2d at 1082 (mandatory) *and Shrock v. Altru Nursing Registry*, 810 F.2d 658, 661 (7th Cir.1987) (same) *with R.K. Harp Inv. Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir.1987) (decision to award sanctions is subject to an abuse of discretion). We believe that the better view is that of *Szabo Food Service* and *Shrock*, and that this is the emerging trend as evidenced by recent decisions from other circuits. We therefore adopt as the rule in this circuit that once a violation of Rule 11 is found, sanctions must be imposed.

## III.

### A.

■ The standard for imposing sanctions under Rule 11 is an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances. *See Dreis & Krump Mfg. v. International Ass'n of Machinists,* 802 F.2d 247, 255 (7th Cir.1986) (collecting cases); *Brown v. National Board of Medical Examiners,* 800 F.2d 168, 171 (7th Cir.1986); *accord Kurkowski v. Volcker,* 819 F.2d 201, 204 (8th Cir.1987); *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1127 (5th Cir.1987) (collecting cases). Subjective bad faith is no longer the crucial inquiry. *See, e.g., Brown,* 800 F.2d at 171. The *Advisory Committee Note,* 97 F.R.D. 198 (1983), makes clear that it was the intent of the committee "to reduce the reluctance of courts to impose sanctions." *Id.* The objective standard incorporated into the 1983 revisions was meant to be more stringent than the original good-faith formula, and thus it was expected that a greater range of circumstances would trigger its violation. *Id.* at 198–99. As the Ninth Circuit has stated recently, "the [1983] amendments' major purposes were the deterrence of dilatory or abusive pretrial tactics and the streamlining of litigation." *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536 (9th Cir.1986) (discussing views of advisory committee members).

■ Rule 11 contains two grounds for sanctions. Each ground is concerned with eliminating abuses in the federal courts. The first ground is the "frivolousness clause." *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830 (9th Cir.1986); *see Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1080 (7th Cir.1987). This portion of Rule 11 is composed of two subparts: whether the party or attorney made a reasonable inquiry into the facts, and whether the party or attorney made a reasonable inquiry into the law. *See Thomas v. Capital Security Services, Inc.,* 812 F.2d 984, 988 (5th Cir.1987). A violation of either subpart of the frivolousness clause constitutes a violation of Rule 11. *See id.* at 989.

■ To determine whether the attorney made a reasonable inquiry into the facts of a case, a district court should consider: whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts. *See Advisory Committee Note,* 97 F.R.D. at 199; *R.K. Harp Investment Corp. v. McQuade,* at 1103–04 (7th Cir. June 23, 1987); *Thomas,* 812 F.2d at 988 (citations omitted).[4]

■ To determine whether the attorney in question made a reasonable inquiry into the law, the district court should consider: the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law. *See Advisory Committee Note,* 97 F.R.D. at 199; *Thomas,* 812 F.2d at 988. Whether a party is appearing *pro se* may be relevant to either determination under the frivolousness clause. *See Cheek v. Doe,* 828 F.2d 395, 397 (7th Cir.1987) (per curiam); *Reis v. Morrison,* 807 F.2d 112, 113 (7th Cir.1986) (per curiam).

---

**4.** We have recently explained the adequate investigation rule:

> The principal function of the 1983 amendment to Rule 11 was to add the requirement of adequate investigation before filing a complaint. It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case. Discovery fills in the details, but you must have the outline of a claim at the beginning. Rule 11 requires independent inquiry.

*Szabo Food Service,* 823 F.2d at 1083 (citations omitted). *See also Federal Deposit Insurance Corp. v. Elefant,* 790 F.2d 661, 667 (7th Cir. 1986). In this case, Neely did not even have the outline of a claim.

The other prong of Rule 11, the "improper purpose" clause, *Zaldivar*, 780 F.2d at 831, provides that a motion, pleading, or other document may not be interposed for purposes of delay, harassment, or increasing the costs of litigation. Fed. R.Civ.P. 11. Like the frivolousness clause, whether a party or attorney acted with an improper purpose is based on an objective standard. However, we have noted that subjective bad faith or malice may be important when the suit is objectively colorable. *See In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985). "The Rule effectively picks up the torts of abuse of process (filing an objectively frivolous suit) and malicious prosecution (filing a colorable suit for the purpose of imposing expense on the defendant rather than for the purpose of winning)." *Szabo Food Service*, 823 F.2d at 1083 (citations omitted). Subjective bad faith is relevant in situations involving malicious prosecution of claims, although not in situations where a party has repeatedly pursued implausible claims. *See Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1202 (7th Cir.1987). *Cf. Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1521 (9th Cir.1987) (*citing Zaldivar*, 780 F.2d at 831–32).

### B.

In this case, the district court imposed sanctions under both prongs of the frivolousness clause. The district court's conclusion that Neely failed to make an adequate inquiry into the facts of the case prior to filing the second amended complaint is correct. Also, the court was correct in concluding that Neely did not make a reasonable investigation into the law. The ADEA claim was totally unsupported by the existing law, and the § 1983 claims, although a closer question, were not warranted by the law. Finally, the § 1981 claims were legally insufficient. Thus, all of the counts in the second amended complaint failed the standards contained in Rule 11, and the district court correctly imposed sanctions.

Neely failed to make an adequate investigation as to whether the second amended complaint was supported by the facts. Neely was the third lawyer to represent Brown, and a reasonable attorney would have inquired as to why the previous attorneys had left the case. Also, at the time Neely entered the case, the record demonstrated that Brown's claims were not supported by the facts. Thus, because the record had been developed at the time Neely became Brown's attorney, Neely did not have to rely on Brown for the factual foundation to support the case. Therefore, Neely must share responsibility for filing the second amended complaint. Moreover, the defendants produced what documents they had, and put forth unrebutted evidence that they routinely destroyed exam books. This information made clear that Brown had no claim. Furthermore, it is clear that the facts of this case were not so complicated as to cause a reasonable attorney to file a complaint such as the one Neely filed. Finally, Neely does not claim that he did not have sufficient time to investigate. Therefore, we conclude that Neely failed to make the reasonable inquiry that Rule 11 requires to determine whether the second amended complaint was well-grounded in the facts of the case. Although Rule 11 does not require "scholarly exposition or exhaustive research," *Szabo Food Service*, 823 F.2d at 1081, Neely failed to make the minimal amount of inquiry incumbent on a competent attorney.

Neely also failed to make a reasonable inquiry as to whether the second amended complaint was supported by the existing law. The ADEA claim clearly lacked merit. Because Neely had failed to file a complaint with the EEOC, the district court lacked jurisdiction. *See Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 287 (7th Cir.1986); *Posey v. Skyline Corp.*, 702 F.2d 102, 104 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

The § 1983 claim is more complicated, however. The state action doctrine is complex and fluid. This is evidenced by the large number of Supreme Court cases on the subject in recent years. *See generally* 2 R. Rotunda, J. Nowak, & J. Young,

*Treatise on Constitutional Law Substance and Procedure,* ch. 16 (discussing state action). In this case, the district court dismissed the § 1983 claims for lack of state action, although it expressly did not decide whether the § 1983 claims were so "untenable" as to justify sanctions. *See Brown v. Federation of State Medical Boards,* No. 82 C 7398, slip op. at 18 (N.D. Ill. May 25, 1985). However, in the district court's April 29, 1986 order, it assessed fees apparently because the § 1983 claims were "untenable." Although we agree with the court that the § 1983 claims were not supported by the law, and therefore subject to sanctions, the court should have specified why it believed these claims were sanctionable. Such an express finding would assist this court's review.

The district court found that the § 1981 claims were facially defective because Brown failed to allege intent, injury, or causation, and because Brown failed to indicate which of the four enumerated activities in § 1981 was in issue. We agree with the district court that, as filed, the § 1981 claims in the second amended complaint were legally deficient. Neely made an incomplete legal argument, and a reasonably competent attorney should have been aware of how to properly allege a § 1981 claim. As with the § 1983 claims, we uphold the award of sanctions, although an express finding that the § 1981 counts were sanctionable would have made our review simpler.

Although we agree with the district court that this case warranted the imposition of sanctions, we note that courts must be careful not to chill either creativity or objectively reasonable efforts to extend or change the law. *See Szabo Food Service,* 823 F.2d at 1082 ("[A] court must take care not to penalize arguments for legal evolution."); *TCI,* 769 F.2d at 448. This holds true especially when constitutional doctrines are involved, although we do not mean to suggest that any constitutional argument, regardless of its lack of merit, is shielded from Rule 11 sanctions.[5]

**5.** Because the district court did not address whether the second amended complaint was

## IV.

The next step in our analysis is to determine whether the district court's action constituted an abuse of discretion, because it failed to state with some specificity the reasons for the imposition of the sanction, and the manner in which it was computed. We conclude that the district court's lump-sum award was deficient in this regard, because the court's findings lacked the necessary specificity for this court to review and uphold the award. Therefore, we remand this case for a redetermination of the amount of Rule 11 sanctions that should be imposed.

## A.

Due to the impact sanctions may have on a party or an attorney's career and personal well-being, sanctions should not be lightly imposed. *See Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1131 (5th Cir.1987). Thus, the basic principle underlying Rule 11 is that "[i]n choosing a sanction ... 'the least severe sanction [that is] adequate to serve the purpose should be imposed.'" *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir.1987) (footnote omitted) (*quoting* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 201 (1985)); *see Eastway Construction Corp. v. City of New York,* 637 F.Supp. 558, 565 (E.D.N.Y.1986), *aff'd,* 821 F.2d 120, 123 (2d Cir.1987).

Although a district court should always keep in mind this basic principle, it must do so in light of Rule 11's several related purposes. In *In re TCI, Ltd.,* 769 F.2d 441 (7th Cir.1985), we explained that one of the goals of Rule 11 is to impose costs on the careless or reckless lawyer. Compensation is one thrust of Rule 11, we noted, primarily because Rule 11 was designed to implement the "bad faith exception to the American Rule ... that in a system requiring each party to bear its own fees and costs, courts will ensure that each party really *does* bear the costs and does not foist ex-

also filed for a harassing or vexatious purpose, *we do not address that issue on appeal.*

penses off on its adversaries." *Id.* at 446; *see also Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986) ("Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under Rule 11.") (citations omitted).

 Compensation, although an important consideration, is not the only purpose underlying Rule 11. An even more important purpose is deterrence. "Widespread concern over frivolous litigation and abusive practices of attorneys led to the amendment in 1983 of Rule 11...." Schwarzer, 104 F.R.D. at 181; *see also Dreis & Krump Mfg. Co. v. International Ass'n of Machinists,* 802 F.2d 247, 255 (7th Cir.1986) (Collecting cases from this circuit imposing sanctions for "groundless litigation."). Sanctions under Rule 11 have the function of deterring both the individual attorney (or party) and other members of the bar (or other potential litigants) from taking the same frivolous course of action. As we recently stated: "Rule 11 is designed to discourage unnecessary complaints and other filings...." *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987) (citations omitted); *see Kurkowski v. Volcker,* 819 F.2d 201, 204 (8th Cir.1987); *Matter of Yagman,* 796 F.2d 1165, 1184 (9th Cir.1986). As the Second Circuit recently has noted, "an award of attorney's fees to a prevailing defendant, under either section 1988 or Rule 11, serves not only as compensation ... but also as a sanction against the [offending party]." *Eastway Construction Corp.,* 821 F.2d at 122.

### B.

The general principles that underlie Rule 11 should be considered in fashioning any Rule 11 sanction. Precisely how the district court should impose a sanction, however, requires further discussion.

In *Szabo Food Service,* we noted that:

Twice in recent months we have encountered cases in which district judges denied substantial motions for sanctions without giving reasons. Twice we have

remanded for more complete consideration. *Shrock v. Altru Nurses Registry,* 810 F.2d 658 (7th Cir.1987); *Dreis & Krump Manufacturing Co. v. Machinists & Aerospace Workers,* 802 F.2d 247 (7th Cir.1986).

*Szabo Food Service,* 823 F.2d at 1075. We followed the same course in *Szabo Food Service* and remanded, declining at that time to join the Fifth Circuit "in requiring judges to make findings and give explanations every time a party seeks sanctions under Rule 11." *Id.* at 1084 (*citing Thomas v. Capital Security Services, Inc.,* 812 F.2d at 989).

 Unlike the district court in *Szabo,* the district court in this case granted the motion for sanctions. However, here we conclude that the district court did not provide adequate specificity in the award of sanctions. In light of the need for this court to again remand for more particular findings, we now request that in cases involving substantial awards a district judge state with some specificity the reasons for the imposition of a sanction, and the manner in which the sanction was computed. What is a "substantial" award is an inquiry that will have to be made on a case by case basis, but will generally involve cases in which the award involves a large sum of money or is large in relation to the offending conduct. Moreover, the sanctions awarded must "be quantifiable with some precision and properly itemized in terms of the perceived misconduct and the sanctioning authority." *Matter of Yagman,* 796 F.2d at 1184. What we mean by "quantifiable with some precision" is an award that sufficiently incorporates the district court's findings and conclusions so that a reviewing court can effectively review the justification for granting the award. If the district court makes specific determinations, then the appellate court can clearly follow the path that the district court took. "It is difficult [for an appellate court] to assess the reasonableness of a lump-sum sanctions award ... which is intended to cover a myriad of misconduct over a period of time and is based upon a variety of authority." *Matter of Yagman,* 796 F.2d at 1184;

*see Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986); *cf. Munson v. Friske,* 754 F.2d 683, 697 (7th Cir.1985) (same rule in § 1988 cases).

 In some cases, the district court may choose to give a small portion of the fees requested as a sanction. Compensation would not be the primary motivating force behind such a sanction; rather, deterrence of the frivolous litigation would be the court's purpose. Rule 11 is the appropriate vehicle to punish those who abuse their right of access to the federal courts. The Advisory Committee Note makes clear that the "detection and *punishment* of a violation ... is part of the court's responsibility for securing the system's effective operation." *Advisory Committee Note,* 97 F.R.D. at 200 (emphasis added). The specific findings requirement would not be appropriate when the imposition of modest sanctions is solely for the purpose of deterrence. *See Ordower v. Feldman,* 826 F.2d 1569, 1575–76 (7th Cir.1987). In a case where deterrence is the purpose behind the sanction, the trial court must strive to impose a sanction that fits the inappropriate conduct.

 Finally, in appropriate cases, a district court should reflect upon equitable considerations in determining the amount of the sanction. Although equitable considerations are not relevant to the initial decision to impose sanctions (because that is a question of law), once a court determines that sanctions are appropriate, equitable factors may be an ingredient in the discretionary aspect of Rule 11—fashioning an award.

One equitable consideration, perhaps relevant to this case, is the sanctioned attorney's (or party's) assets. *See Oliveri,* 803

F.2d at 1281 (collecting cases); *Matter of Yagman,* 796 F.2d at 1185; *cf. Munson,* 754 F.2d at 697. Another consideration is whether the party seeking fees caused the litigation to be longer than necessary. *See Matter of Yagman,* 796 F.2d at 1188. A duty of mitigation exists, and a district court should ensure that the party requesting fees has not needlessly protracted the litigation. *See Schwarzer,* 104 F.R.D. at 203 ("A party having vigorously resisted a baseless claim may therefore find that the court, in making an award, will consider its expenditures to have been excessive." (footnote omitted)). Other equitable factors may include the experience of the lawyer, and whether the area of law was one that required special expertise.

### C.

In this case, we conclude that the district court's action constituted an abuse of discretion, because the court, in its decision to award a substantial lump-sum payment to each of the defendants, did not provide sufficient specificity for the basis of its decision. Therefore, the district court's findings are inadequate for this court to review.

 On remand, if the district court reimposes such a substantial sanction, it should state with some specificity the reason for the imposition of the sanction, and the manner in which it was computed. An estimation of what amount of time was reasonably needed to defend against each of the frivolous claims should be made, including an examination of each submitted fee petition, with the district court making appropriate adjustments.[6] Finally, the district court may wish to further reflect upon equitable factors in fashioning its award.

---

**6.** We note that the defendants justify the great amount of time they spent at trial by stating that "the appellees take their responsibilities under the law extremely seriously and believe that the integrity of medical licensure in the United States might be critically harmed if claims groundless in fact, but dressed up as civil rights complaints, were allowed to proceed through trial for lack of a complete and effective de-

fense." Df. Br. at 15. We understand that a party will want to vigorously defend its position. Nevertheless, a party should always remember that, in seeking to support its views, it should not protract or complicate frivolous litigation. Clearly frivolous litigation may be rebutted quite simply without a flurry of documents.

In *TCI* we quite clearly stated that "[l]awyers who litigate recklessly must now take the consequences." *TCI,* 796 F.2d at 446. The consequences are that if an attorney imposes high costs on the other party, he or she will have to pay them. However, in *TCI* we did not say that the offending attorney or party would always be required to pay *all* the fees and costs that could be assessed. Instead, costs and fees must be assessed in light of the purposes of Rule 11. As we have stated, "fee awards are an equitable matter, thereby permitting the district court to consider the relative wealth of the parties." *Munson,* 754 F.2d at 697.

## V.

Rule 11 has created a burgeoning body of law, despite the advisory committee's plea that litigation over fees not become "satellite litigation." *See Advisory Committee Note,* 97 F.R.D. at 201; *see also Golden Eagle,* 801 F.2d at 1541. Unfortunately, as in so many other cases, *see, e.g., Golden Eagle,* 801 F.2d at 1541, the satellite Rule 11 litigation in this case has taken over.

To avoid prolonging and complicating such Rule 11 satellite litigation, we have sought to provide the district courts with some guidance as to the criteria this court will use in evaluating a Rule 11 award. District courts should provide specific findings when awarding substantial compensatory sanctions. However, because Rule 11 serves a deterrence function as well, such findings are not always necessary. Furthermore, when formulating the sanction, the district court should consider both the purposes of Rule 11 that are to be served and equitable factors. We fully recognize the heightened responsibilities that this opinion requires of district court judges. We believe, however, that it is in accordance with the policy behind Rule 11. Also, our holding should advance the goal of efficient judicial administration by lessening the need to remand future cases for further findings.

As we have stated: "judges should always seriously reflect upon the nuances of the particular case, and the implications the case has on the nature of the legal representation, before imposing sanctions." *Brown,* 800 F.2d at 173. Nevertheless, attorneys and laypersons who use the federal courts may not "proceed with impunity when [an] argument has no merit." *Robinson,* 808 F.2d at 1131. As Judge Posner recently stated:

> Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts. The rules, whether statutory or judge-made, designed to discourage groundless litigation are being and will continue to be enforced in this circuit to the hilt. . . .

*Dreis & Krump Mfg.,* 802 F.2d at 255 (citations omitted); *see Szabo Food Service,* 823 F.2d at 1082 ("We take Rule 11 and its counterpart Fed.R.App.P. 38 seriously and expect district judges, lawyers, and litigants to do the same." (citations omitted)).

The portions of the district court's orders granting Rule 11 sanctions are AFFIRMED. The portions of the district court's orders determining the amount of sanctions are VACATED, and the case is REMANDED for proceedings consistent with this opinion.[7]

---

7. The defendants have requested that we impose sanctions, pursuant to Federal Rule of Appellate Procedure 38, against Neely for filing a frivolous appeal. As our disposition of this case makes clear, this appeal was not frivolous.