**Charlene MURAOKA, Plaintiff,**

v.

**AMERICAN OSTEOPATHIC ASSOCIATION, an Illinois not-for-profit corporation, and National Osteopathic Foundation, an Illinois not-for-profit corporation, Defendants.**

**No. 86 C 6787.**

United States District Court,
N.D. Illinois, E.D.

Nov. 4, 1987.

Jeffrey M. Marks, Abraham Brustein, Dozoryst, Brustein, Neuman & Marks, Chicago, Ill., for plaintiff.

Michael C. Cook, Stephen O'Donnell, McCullough, Campbell & Lane, Chicago, Ill., for defendants.

**MEMORANDUM OPINION
AND ORDER**

ASPEN, District Judge:

Defendants, the American Osteopathic Association ("AOA") and the National Os-

---

teopathic Foundation ("NOF"), seek sanctions, pursuant to Fed.R.Civ.P. 11, for failure of plaintiff Charlene Muraoka's attorneys Abraham Brustein and Jeffrey M. Marks of Dozoryst, Brustein, Neuman & Marks to conduct a "reasonable inquiry," prior to filing this case, into the facts and law underlying Muraoka's complaint. For the reasons discussed below, we grant the motion of AOA and NOF for sanctions under Fed.R.Civ.P. 11.

### Factual Background

Plaintiff Muraoka filed the complaint and amended complaint in this case and alleged that defendants NOF and AOA violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (1982).[1] The complaint stated Muraoka was paid by the AOA and NOF, both recipients of federal funds, for duties which included the administration of a financial assistance program. The complaint contended Muraoka was forced to resign her position at the NOF solely because of defendants' refusal to accommodate Muraoka's handicap in violation of § 504. Despite these allegations, Muraoka was never paid by AOA funds, although AOA administered the NOF payroll accounts and therefore issued Muraoka's payroll check. Additionally, neither AOA nor NOF administered a federal financial assistance program. In short, there was never any federal funding connection to Muraoka's work, and, accordingly, she never had standing to sue under § 504. Six months into the case, Muraoka's attorneys' finally came to the same conclusion and moved to voluntarily dismiss the complaint. We dismissed the case with prejudice. Defendant then moved for sanctions under Fed.R.Civ.P. 11.[2]

### Discussion

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (1982), states a handicapped individual may not be subjected to discrimination under any *program or activity* receiving federal financial assistance. The Supreme Court has held this means that § 504 "by its terms, prohibits discrimination only by a 'program or activity' receiving Federal financial assistance ... (and) limits the ban on discrimination to the *specific program* that receives federal funds." *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 635–36, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568 (1984) (citations omitted) (emphasis added). *See also Foss v. City of Chicago*, 640 F.Supp. 1088, 1090 (N.D.Ill. 1986) (the ban on discrimination under § 504 does not apply to all activities of every recipient of federal funds; the discrimination must relate to the specific program or activity that receives federal funds); *adopted*, 817 F.2d 34 (7th Cir.1987).

The purpose of § 504 is not to provide a general prohibition on discrimination against the handicapped by recipients of federal funds. *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1232 (7th Cir.1980). Rather, the discrimination must come in the "operation of the program or manifest itself in a handicapped individual's exclusion from the program or a diminution of the benefits he would otherwise receive from the program." *Id.*

In order to have standing to sue under § 504, Muraoka needed to show that the program or activity she worked on at the NOF was funded by federal financial assistance. In her amended complaint, Muraoka alleged upon information and belief that the defendants were recipients of financial assistance from the United States. In her deposition, she stated she had rea-

---

**1.** Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, states in pertinent part:
No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
29 U.S.C. § 794 (1982).

**2.** Fed.R.Civ.P. 11 provides in relevant portion:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law....
Fed.R.Civ.P. 11 (1987).

son to believe the AOA and the federal funds it received were involved in the loan program she administered for both the AOA and NOF. This belief was based in part on a conversation Muraoka had with her former supervisor Mr. Lee Stein and on the assumption that the AOA, which processed her paychecks, paid her salary for administering the loan program. After six months of discovery, however, Muraoka's attorneys learned that Muraoka in fact did not have standing to sue under § 504 and requested a voluntary dismissal of this action. The case was dismissed with prejudice and defendants requested sanctions under Rule 11.

The question before the Court is whether Muraoka's attorneys conducted an investigation that was "reasonable under the circumstances" and whether they could have determined, prior to filing the complaint, that Muraoka did not meet the program-specific requirement of § 504. The test under Rule 11 for sanctions is "objective." *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986). "An attorney risks sanctions for failing to make a 'reasonable inquiry' into both the factual and legal basis for the claim he asserts." *Brown v. National Board of Medical Examiners*, 800 F.2d 168, 172 (7th Cir.1986). The Seventh Circuit determined:

> The principal function of the 1983 amendment to Rule 11 was to add the requirement of adequate investigation before filing a complaint. It is not permissible to file a suit and use discovery as the sole means of finding out whether you have a case.... Rule 11 requires independent inquiry. The amount of investigation required by Rule 11 depends on both the time available to investigate and on the probability that more investigation will turn up important evidence.... Only a "reasonable" inquiry is necessary.

*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987) (citations omitted).

Rule 11 requires that counsel not rely solely upon the allegations made by the client, but that they also conduct an independent inquiry into the facts. *O'Rourke v. City of Norman*, 640 F.Supp. 1451, 1469 (W.D.Okla.1986). An attorney must investigate the relevant facts and the requirements of the law to determine whether the facts support a recognized entitlement to relief. *In re TCI Ltd.*, 769 F.2d 441, 446 (7th Cir.1985). This, of course, is tempered by the requirement that the investigation be reasonable. Thus, in a situation where a client comes to an attorney only weeks or days before a statute of limitations begins to run, then much less of a factual inquiry would be reasonable. This is not, however, the case here.

When the defendants deposed Muraoka's former supervisor at NOF, Mr. Stein, in March 1987, he disclosed that Muraoka was paid only by the NOF, although the AOA may have issued her paycheck on the NOF account, that NOF never received any federal funds, and that no federal funds were used in the loan program Muraoka administered. Additionally, he stated that he could not recall ever telling Muraoka that the student loan program she administered was federally funded. Mr. Stein, a friend of Muraoka's, was never contacted by Muraoka's attorneys prior to their filing both her complaint and amended complaint. This was so, despite the fact that Muraoka thought federal funds were involved in the loan program she administered because of a conversation she had with Mr. Stein. Mr. Stein, a friend of Muraoka's with knowledge of the critical facts relating to standing, was clearly a reasonable person to interview prior to filing the complaint in this case. A prefiling inquiry into the law underlying a § 504 cause of action would have revealed the standing requirement and a prefiling inquiry into the facts would have revealed that Muraoka lacked the standing to pursue this complaint.[3]

---

3. Muraoka's attorneys claim they did, however, have a telephone conversation with Mr. Stein before his deposition. Mr. Stein, however, did not recall this conversation. During the conversation, Mr. Stein allegedly stated that the AOA received federal funding in connection with its operation, that Muraoka was working on a project for NOF which was funded in part by

Given Rule 11's dictate that a "reasonable" *prefiling* investigation be conducted, we find that Muraoka's attorneys Dozoryst, Brustein, Neuman & Marks failed to adequately investigate the factual basis of Muraoka's claim by not fully interviewing Mr. Stein prior to filing or amending the complaint. Under these circumstances, we conclude this constituted a failure of Muraoka's attorneys to make a reasonable prefiling investigation within the meaning of Rule 11.

Muraoka contends, however, that the imposition of sanctions would "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." While Rule 11 provides for a "good faith argument for the extension, modification, or reversal of existing law," there is nothing in Muraoka's complaint to indicate this claim was pursued as an extension, modification or reversal of existing law. Muraoka has offered no theory how § 504 of the Rehabilitation Act should apply to these facts. According to the Advisory Committee Notes to Rule 11:

> The new language of Rule 11 is intended to reduce the reluctance of courts to impose sanctions ... by emphasizing the responsibilities of the attorney and reenforcing those obligations ... [and it] stresses the need for some prefiling inquiry ... to satisfy the affirmative duty imposed by the rule.

(Fed.R.Civ.P. 11, Notes of Advisory Committee on Rules, 1983 Amd.).

"Suits are easy to file and hard to defend." *In re TCI Ltd.*, 769 F.2d at 446. One cost of a lawsuit is the research to ascertain the facts and review the law. *Id.* Muraoka's attorneys did not adequately meet the duty and obligations of Rule 11. Given the lack of adequate prefiling investigation by Muraoka's attorneys of the factual basis of the claim filed, we find that sanctions are required in this case.

Having determined that Rule 11 has been violated and that sanctions against Muraoka's attorneys are required, we turn to the issue of what the sanctions should be. Defendants have requested that we award them "reasonable expenses and attorney's fees." We do not find, however, that an award of all defendants attorneys' fees is warranted by this case. The basic principle underlying Rule 11 is that in choosing a sanction, the least severe sanction that is adequate to serve the purpose should be chosen. *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1437–38 (7th Cir.1987). If our sole goal in awarding sanctions were compensation, then an award of full attorney's fees would be appropriate. However, an even more important purpose of Rule 11 is deterrence, and it is, we find, the principal goal to be achieved in this case.[4] Accordingly, we impose a sanction of three hundred dollars against the law firm Dozoryst, Brustein, Neuman & Marks.[5] Such an award should

---

AOA money, and that he had no independent knowledge of the type of federal funding which was received by the AOA. Because this conversation took place after the complaint and amended complaint were filed, it obviously does not represent a prefiling inquiry. Muraoka's attorneys obviously raise it to justify their failure to interview Mr. Stein prior to filing the complaint. Implicitly, they are arguing that, even if they had talked to him, they would not have gotten the information needed. We disagree. First, all Muraoka's attorneys claim to have done was have one telephone conversation with Mr. Stein. They did not try to interview him as to this very critical issue, and the fact that Mr. Stein failed to even recall the conversation demonstrates the lack of formality attached to the telephone call. We think it is unreasonable to conclude that Mr. Stein lacked knowledge of the critical funding facts in December 1986 but somehow acquired them in

March 1987. Mr. Stein left the employ of the NOF in December 1985. There is no indication that he only became aware of these facts after his conversation with Muraoka's attorneys in December 1986. Accordingly, we still find that a proper prefiling interview with Mr. Stein would have revealed to Muraoka's attorneys the fact that she lacked standing to sue under § 504.

4. "In some cases, the district court may choose to give a small portion of the fees requested as a sanction. Compensation would not be the primary motivating force behind such a sanction, rather, deterrence of the frivolous litigation would be the court's purpose." *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1439 (7th Cir.1987).

5. The cost of this sanction, of course, is not to be passed on by the law firm to its client.

cause Muraoka's attorneys and other plaintiff attorneys to think twice and investigate first before hurrying to file a lawsuit.[6]

In conclusion, we find that Muraoka's attorneys of the firm Dozoryst, Brustein, Neuman & Marks violated the requirements of Fed.R.Civ.P. 11 by filing Muraoka's complaint in federal court without first conducting a reasonable inquiry into the facts underlying the complaint. Accordingly, we find a sanction is appropriate, and we assess a sanction of three hundred dollars, one hundred and fifty dollars payable to each defendant. It is so ordered.

6. Even if our primary goal in fashioning this sanction were not deterrence, before awarding a substantial sanction to defendants we would need to take into consideration equitable factors. *Brown,* 830 F.2d at 1439. Additionally, we would have to take into consideration defendants' duty of mitigation. *Id.* This would probably weigh in favor of plaintiff. We found sanctions were appropriate in this case because a prefiling investigation would have revealed the necessary information concerning the funding issue. Yet, defendants for some reason allowed this case to run on for over six months, apparently without tendering the information to plaintiff that would have shown her that her claim in federal court did not exist. If the information was so clear and available to plaintiff, then it should have been equally clear and available to defendants. Defendants' first step in responding to plaintiff's complaint should have been to tender the necessary information. Their failure to do so may have violated their duty of mitigation, and, accordingly, they would probably not be entitled to recover any fees needlessly expended in this litigation. "Clearly frivolous litigation may be rebutted quite simply without a flurry of documents." *Id.* at 1439 n. 6. For this reason, deterrence rather than full compensation to defendants is the appropriate goal in this case.