Antonio C. **MASTROBUONO** and Diana G. **Mastrobuono**, Plaintiffs,

v.

**SHEARSON LEHMAN HUTTON, INC.**, a corporation and Nick Diminico, Richard F. Benzer, Mark Stevenson, Defendants.

No. 89 C 0773.

United States District Court, N.D. Illinois, E.D.

Oct. 11, 1989.

**244**

John O'Malley, John O'Malley, Jr., Chicago, Ill., for plaintiffs.

Thomas M. Knepper, Therese M. Obringer, Neal, Gerber, Eisenberg & Lurie, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the defendants' motion for attorney's fees and court costs pursuant to Fed.R.Civ.P. 11. For the following reasons, the court grants the motion.

## FACTS

In their response to this motion, plaintiffs recount many of the facts leading up to this case. However, it is necessary only to state the facts relating to the two complaints filed.

Plaintiffs employed defendant Diminico, an employee of defendant Shearson Lehman Hutton, Inc. (Shearson) to manage their investment account. Plaintiffs alleged that Diminico abused their account, investing in shaky securities and "churning" to generate commissions. Plaintiffs filed suit against Diminico, his supervisors and Shearson.

Shearson moved this court to stay the proceedings pending arbitration pursuant to a clause in its "Client Agreement". Plaintiffs alleged that the signatures on the agreement were forged. Plaintiffs claimed that defendants had sent a prior client agreement on which the signatures were forged, so plaintiffs doubted the veracity of any other agreement, and that the Mastrobuonos also did not remember having signed the current agreement. The court ordered limited discovery on the authenticity of the signatures. The defendants' expert concluded that the signatures on the agreement were indeed those of the plaintiffs. Moreover, the plaintiffs' own expert concluded the same.

The plaintiffs then filed their first amended complaint. This complaint wholly abandoned the argument that the signatures on the second agreement were forged. Instead, the plaintiffs remembered, in great detail, the events surrounding the signing of the agreement and alleged that Diminico misrepresented the purpose of the documents and did not tell them of the arbitration clause.[1]

On August 2, 1989, the court granted the defendants' motion to stay proceedings and compel arbitration. Defendants then brought the instant motion for attorneys' fees and court costs, under Fed.R.Civ.P. 11.

## DISCUSSION

The application of rule 11 sanctions is well documented in this circuit. The most important purpose of rule 11 is to deter frivolous litigation and the abusive practices of attorneys. *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750 (7th Cir.1988); *Flipside Productions Inc. v. Jam Productions, Ltd*, 843 F.2d 1024 (7th Cir.1988), *cert. den.*, —— U.S. ——, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). Compensation, although an important consideration, is not

---

1. The court notes that the first amended complaint purports to reallege the entire original complaint. First Amended Complaint, p. 1, par. 1. However, the first amended complaint admits that the plaintiffs did sign a client agreement, albeit alleging fraud in the execution. *Id.* at p. 2, par. 7–10. Although the federal courts allow alternative pleading, Fed.R.Civ.P. 8(e)(2), the court finds that the alternative *facts* proposed by the plaintiffs here stretch the rule to the breaking point.

the only purpose underlying rule 11. *Brown v. Federation of State Medical Boards of U.S.*, 830 F.2d 1429 (7th Cir. 1987). An even more important purpose is deterrence. *Brown*, 830 F.2d at 1438. The Seventh Circuit has stated that it takes rule 11 violations seriously and expects the district judges, lawyers and litigants to do the same. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir.1987).

Rule 11 has been interpreted to consist of several strands. There must be reasonable inquiry into both fact and law; there must be good faith (that is, the paper must not be interposed "to harass"); the legal theory must be objectively warranted by existing law or a good faith argument for the modification of existing law; and the lawyer must believe that the complaint is well grounded in fact. *Szabo*, 823 F.2d at 1080. An attorney filing the complaint or other paper must satisfy all four requirements. *Id.* The standard for imposing rule 11 sanctions is an objective determination of whether the sanctioned party's conduct was reasonable under the circumstances. *Smith*, 845 F.2d at 752. Whether there has been a violation of rule 11 is essentially a judgment call. *Flipside*, 843 F.2d at 1036.

In this case, defendants claim sanctions based on the failure of counsel to reasonably inquire into the basis of the claim and the fact that counsel advanced meritless arguments. As to the first basis, the court believes that counsel here did not make a reasonable inquiry into the facts of this case before filing this suit. Plaintiffs claimed that they did not sign the Client Agreement. Plaintiffs' Response to Motion to Stay, p. 1. Plaintiffs base this on the past conduct of the defendants[2] and the fact that the Mastrobuonos had no recollection of signing it. However, counsel is not justified in relying solely on the assertion by his clients that they had not signed the agreement.

A similar assertion arose in *Calloway v. Marvel Entertainment Group*, 111 F.R.D.

637 (S.D.N.Y.1986). In that case, plaintiff filed a complaint alleging copyright infringement. *Calloway*, 111 F.R.D. at 641. The defendants tendered an agreement bearing his signature which allowed use of the work. *Id.* The plaintiff alleged that it was not his signature and the documents must have been forged. *Id.* Later, after further litigation, the plaintiff abandoned the claim of forgery. *Id.* In imposing rule 11 sanctions there, the court noted that counsel made no attempt to verify that the signature was false when a summary judgment motion was raised, and that, after hiring an expert, still failed to find any evidence of forgery. *Id.* at 647. The court stated;

"Given the admitted absence of any affirmative evidence from either the signatory on the documents that Calloway's signature was not genuine, it is inconceivable that this allegation could have been made in accordance with the obligations imposed by rule 11. Instead it appears that in their ambition to maintain this action, Calloway and counsel allowed his inconclusive ability to recognize his signature to be translated into a conclusive denial of his signature. When the basis for opposing summary judgment is proffered on such an insignificant foundation, rule 11 sanctions are appropriate." *Id.*

The *Calloway* facts closely mirror those present in the instant action. Counsel for the Mastrobuonos opposed a motion to stay and compel arbitration on the basis of his clients' belief that the signatures were forged. Plaintiffs, although admitting that the signatures greatly resembled theirs, based this belief wholly on the prior acts of the defendants and their inability to remember if they had ever signed such an agreement. Plaintiffs' Opposition to Motion for Fee, p. 3. There is no evidence that counsel for plaintiffs ever attempted to corroborate his clients' allegations, or their entire basis for their opposition to the motion to stay, by hiring a handwriting ex-

---

2. Plaintiffs maintain that defendants had previously tendered a forged client agreement.

Plaintiffs' Response to Motion to Stay, p. 3.

pert. The ease by which counsel could have conducted a reasonable inquiry into the substantiality of his clients' claims belies his reliance solely on their allegations. The cost of hiring such an expert surely must be considered in light of the fees and costs incurred in answering the defendants' motion to stay. Therefore, the court finds that counsel did not make a reasonable inquiry into the facts underlying the complaint or plaintiffs' opposition to the motion to stay.

As to the second basis, it is abundantly clear to the court that counsel has proposed claims in the first amended complaint which are not warranted by existing law. The plaintiffs allege that, even though the Mastrobuonos did sign a client agreement[3], the arbitration clause in that agreement was not binding because 1) the client agreement was an adhesion contract, 2) enforcement of the arbitration clause would deprive plaintiffs of their right to a fair trial, 3) arbitration is not open to public scrutiny and not appealable, and 4) Diminico misrepresented the document they signed as "only opening [their] account" and did not inform them of the arbitration clause. Plaintiffs' First Amended Complaint, p. 2–4, par. 7–25. As suggested by defendants, all of these claims have been rejected by the United States Supreme Court or the Seventh Circuit.[4] Counsel cites no cases to refute defendants' argument. Counsel's sole defense is a rather ineffectual argument that;

> "The fact that there have been rulings by the Supreme Court in the past five years, on similar issues, does not mean that those same rulings are impervious to attack. Nor does it mean that the court would dismiss this case on the same grounds, as opposed to differentiat-

ing it on the basis of the differing fact patterns, and reaching a different outcome." Plaintiff's Memorandum, p. 6.

These contentions are "wacky, sanctionabley so." *See, Szabo,* 823 F.2d at 1080. As stated by the *Szabo* court, "When counsel represent that something cleanly rejected by the Supreme Court is governing law, then it is appropriate to conclude that counsel are not engaged in trying to change the law; counsel either are trying to buffalo the court or have not done their homework. Either way, rule 11 requires the court to impose a sanction—for the protection of the judicial process as much as to relieve the financial burden that baseless litigation imposes on either side." *Id.* at 1082. In the first amended complaint, counsel blatantly asserts these claims, with absolutely no recognition of the cases rejecting these arguments and no assertion that these arguments are made in a good faith attempt to modify existing law. The only conclusion this court can draw is that counsel either did not research these positions before filing the first amended complaint or, having done the research, ignored the law and proceeded in spite of it. Clearly, this is the exact type of conduct rule 11 was designed to prevent.

The court is not required to grant the full amount of attorney's fees incurred by the moving party, as the award is primarily intended to impose a deterrent sanction against the conduct of plaintiffs' counsel rather than to simply compensate defendants for out-of-pocket expenses. *Calloway,* 111 F.R.D. at 650. In determining an appropriate sanction, a court should consider the gravity of the violation, the circumstances of the violation in the context of the case and the financial resources of each

---

3. *See,* Plaintiffs' First Amended Complaint, p. 2, par. 7–9.

4. *See, Pierson v. Dean Witter Reynolds, Inc.,* 742 F.2d 334 (7th Cir.1984) (rejecting adhesion contract); *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (rejecting right to a fair trial); *Mitsubishi Motors Corp. v. Solar–Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (rejecting attacks on the arbitration process) and *Prima Paint Corp. v.*

*Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (rejecting fraud in inducement).

The court notes that plaintiffs' counsel does attempt to distinguish *Prima Paint* in his response. Even if the court accepts his argument that "fraud in the inducement" and "fraud in the execution" are sufficiently distinguishable so as to make *Prima Paint* inapplicable to his case, it is still apparent that other three grounds raised were not warranted in existing law.

party. *Id.* at 651. In this action, the court considers the appropriate sanction to be $3,282.30. This amount is to be paid by the plaintiffs and their counsel, in equal parts, to the defendants.

IT IS SO ORDERED.