**VAUGHAN MANUFACTURING COMPANY, Plaintiff-Appellee,**

v.

**BRIKAM INTERNATIONAL, INC., Defendant-Appellant.**

**No. 85–3204.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1986.

Decided Feb. 25, 1987.

Richard J. Ward, Jr., Christie, Parker & Hale, Pasadena, Cal., for defendant-appellant.

Sidney Z. Karasik, Chicago, Ill., for plaintiff-appellee.

ESCHBACH, Senior Circuit Judge.

Vaughan and its predecessors have manufactured and sold a particular folding table, "The Handy Table," since the 1940's. In recent years, Brikam began to make and vend a folding table, "The Fold-Out-Table," which was virtually identical in appearance to "The Handy Table." Alleging unfair competition through the appropriation of its trade dress, Vaughan sued under Section 43(a) of the Lanham Act.[1] Vaughan secured a preliminary injunction and Brikam appeals. Brikam contends that the various elements that the district court found to constitute the trade dress are functionally necessary, rather than arbitrarily chosen, and thus not protectible. Brikam further asserts that the district court erred in finding that the trade dress had acquired a secondary meaning. We will affirm.

I

"The Handy Table" unfolds to form a picnic table complete with seating for four. The standard model's table top and seats are of masonite. The frame is black. The metallic border of the top is yellow. The table sports brass corner pieces and a brass nameplate. The table is portable and has a brown plastic handle. When folded into a carrying case, the table has as its most prominent feature the yellow metallic border. A brass wire loop serves to secure the table when folded.

Vaughan has sold about 400,000 units of "The Handy Table" over the last forty-odd years. The company has sold a further 100,000 units of the "DeLuxe Table," which is distinguished principally through its

---

1. Vaughan alleged violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law unfair competition; deceptive and unfair trade practices in violation of the Uniform Deceptive Trade Practices Act, Ill.Rev.Stat., Ch. 121½, par. 311 *et seq.;* and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat., Ch. 121½, par. 261 *et seq.* The district court held that to recover on any of these counts, Vaughan must prove

that Vaughan had protectible rights in the trade dress, and that there was a likelihood of confusion on the part of the consumer resulting from Brikam's use of the trade dress. The court did not perform separate analyses for each of the counts. We will limit our analysis to the Lanham Act count, since that is sufficient to affirm. The use of a trade dress confusingly similar to a competitor's protected trade dress is unfair competition under Section 43(a) of the Lanham Act.

gold, rather than yellow, border. Vaughan has also sold a small number of different colored versions of the table. Vaughan's primary channels of sales for the table are general distributors, catalogue houses, and large chain stores.

Vaughan has incurred various expenses in marketing the table. Vaughan markets the table in two ways. Over $400,000 has gone to catalogue houses, enabling "The Handy Table" to appear in such catalogues as Sears, Montgomery Wards, J.C. Penney's, and L.L. Bean. Vaughan has also regularly displayed the table at trade shows, at a total cost of about $300,000. Both in the catalogues and at the trade shows, the table itself is exhibited, not the cardboard container in which it is delivered to consumers. The table would often be presented both folded, ready to carry, and unfolded, ready for use.

In 1983, Gook So Kim, the owner of Brikam, asked Walter E. Schneider, a distributor of Vaughan's table, for advice as to what product Kim might produce in Korea that Schneider would sell in the United States. Schneider suggested that Kim purchase a "Handy Table" and manufacture a table like it. Kim produced a red "prototype." Made entirely out of steel, it was much heavier than the "Handy Table," a significant disadvantage for a portable table. Schneider rejected the table. Kim next produced a table virtually identical to Vaughan's table. Schneider showed it to various buyers, although not to the buyers who had been buying Vaughan's table from him. Having received a positive response from the buyers, Schneider decided to go into business with the table.

Brikam, owned by Kim, began importing the table to the United States in 1984. K & S, Inc., a partnership owned equally by Kim and Schneider, distributes the table in the United States, employing a similar marketing strategy to Vaughan's. The price of Brikam's table, however, is substantially lower than Vaughan's. Vaughan's lion's share of the folding picnic table market decreased abruptly, to the point where Brikam's "Fold-Out-Table" outsold "The Handy Table" in 1985. The other competitors, whose tables all differ significantly from "The Handy Table," continue to comprise only a small portion of the market.

Vaughan filed suit for unfair competition against Brikam in the Northern District of Illinois on April 23, 1984. Vaughan moved for a preliminary injunction. After an evidentiary hearing, the district court granted the motion, enjoining Brikam from incorporating Vaughan's trade dress in its table or using the trade dress in marketing its table. The court held the trade dress to be the arbitrary and nonfunctional elements of the table, including the yellow color of the table sides; the color of the masonite top; the black color of the frame; and the style, shape, and color of the lock, handle, label, and other brass parts.

## II

■ Brikam first asserts error in the district court's finding that Vaughan's trade dress had acquired secondary meaning.[2] "Secondary meaning" denotes an association in the mind of the consumer between the trade dress of a product and a particular producer. *See A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 907 (7th Cir.1986). Secondary meaning need not be shown where the trade dress, by itself, is a distinctive, identifying mark, but must be shown where, as here, the trade dress is not inherently distinctive but is claimed to have become identified with the producer over time. *See Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 608 (7th Cir.1986); *see also Wiley v. American Greetings Corp.*, 762 F.2d 139, 141 (1st

---

**2.** A product's trade dress is the overall image used to present it to purchasers; it could thus include, to give a partial list, the product's size, shape, color, graphics, packaging, and label. *See Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 608 (7th Cir.1986) and *LeSportsac, Inc. v. K Mart Corporation*, 754 F.2d 71, 75 (2nd Cir.1985). A trademark is thought of as some-

thing more specific, such as a logo. This court has expressed doubt whether this is a distinction that makes any difference. *Blau*, 781 F.2d at 608. The issues discussed in this case, "secondary meaning" and "functionality," have the same meaning in both areas; courts deciding "trade dress" cases cite freely from "trademark" cases, and vice versa.

Cir.1985). Brikam avers that the district court mistakenly held that secondary meaning was to be presumed from the fact that Brikam had directly copied Vaughan's trade dress. In the alternative, Brikam contends that the finding of secondary meaning was clearly erroneous.

The court below employed a presumption of secondary meaning where a junior competitor deliberately and closely copies the trade dress of a senior competitor in the market. The rationale is that the junior competitor would not have copied the trade dress if not seeking to benefit from the trade dress's favor among buyers. His assessment of the trade dress's value is thus used against him in the subsequent judicial proceeding.

■ The Eleventh Circuit rejected such a presumption in *Brooks Shoe Manufacturing Co., Inc. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir.1983). The court reasoned that the copier might have other motivations than capitalizing on the senior competitor's good will. The court did hold, however, that proof of intentional copying was probative evidence of secondary meaning. This court is in accord at least to that point, *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 611 (7th Cir.1986), as are the Second, *Harlequin Enterprises, Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 950 (2nd Cir.1981), and Federal Circuits. *CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1012 (Fed. Cir.1985). Cf. *M. Kramer Manufacturing Co., Inc. v. Andrews*, 783 F.2d 421, 448 (4th Cir.1986) ("We hold that evidence of intentional, direct copying establishes a prima facie case of secondary meaning sufficient to shift the burden of persuasion to the defendant on that issue.").

■ Although the trial court in this case employed the presumption, it went on to find independently, in the alternative, that Vaughan's trade dress had in fact acquired secondary meaning. This is a finding of fact, reversible only if clearly erroneous. The court rested its conclusion on Vaughan's established place in the market, the funds expended marketing the table, and the many appearances of the table,

complete with trade dress, in catalogues and trade shows. Brikam complains that Vaughan introduced no consumer surveys demonstrating a connection in the public mind between Vaughan's trade dress and Vaughan. In *A.J. Canfield*, 796 F.2d at 908, we expressly held that such surveys are not required in order to succeed on a motion for a preliminary injunction. In that case, Canfield for thirteen years had been the only soft-drink company to use the label CHOCOLATE FUDGE. Canfield's product had also received broad publicity. In the present case, Vaughan had dominated the folding picnic table market for an even longer period. Over that time, Vaughan expended considerable sums to display its table. The sales of Brikam's table were approximately equivalent to the decline in Vaughan's sales. Considering the fact of copying as further evidence of secondary meaning, the court's preliminary finding is not clearly erroneous. Put another way, Vaughan has produced sufficient evidence to support the court's finding that Vaughan is likely to succeed in proving secondary meaning at trial. *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1022 (7th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). We need not reach the issue of the validity of the presumption.

### III

■ Brikam argues that Vaughan's trade dress is not protectible because its elements are functional. Functionality is a defense to a suit brought under Section 43(a) of the Lanham Act. *W.T. Rogers Co., Inc. v. Keene*, 778 F.2d 334, 338 (7th Cir. 1985). The defense exists because granting exclusive rights to functional features of products is the domain of patent, not trademark law. In trademark law, "functional" means not that a feature serves a function; it means that the feature is one that competitors would find necessary to incorporate into their product in order to be able to compete effectively. In *Rogers*, this court gave a practical definition of the test to distinguish functional from nonfunctional features:

[A] functional feature is one which competitors would have to spend money not to copy but to design around, as they would have to do if they wanted to come up with a nonoval substitute for a football. It is something costly to do without (like the hood itself), rather than costly to have (like the statue of Mercury). 778 F.2d at 339. Thus, for example, the "tear-shape-on-a-pedestal" shape of a squeezable citrus bottle is not "functional" (although the bottle serves a function), because there remain many other designs having the same functional advantages for competitors to adopt. *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 429 (5th Cir. 1984) ("To achieve the status of 'functionality,' a design or feature must be superior or optimal in terms of engineering, economy of manufacture, or accommodation of utilitarian function or performance.").

In this case, Brikam addresses each of the components of the table and argues that each is functional, that it would lead to added cost for Brikam to find a substitute. Brikam contends that each of the features is needed for Brikam to compete effectively. The yellow color of the border is said to be necessary because it is bright, but not too wild, coordinates with the masonite, and reflects heat. The color of the masonite is said to be the least expensive available. Brikam avers that black is a standard color to paint frames and a color which does not soil easily. The brass lock, label, corner protectors and hinges are likewise said to be the standard pieces available for such use, "simply what was available when [Brikam] went into the marketplace to buy such parts." Brikam argues that Vaughan would have an unfair competitive advantage if permitted to monopolize each of these features.

■ Brikam's argument fails by focusing on the individual elements rather than the overall trade dress. To accept Brikam's contentions would be akin to saying that there exists a platonic form of the portable folding picnic table and that Vaughan has captured that form in "The Handy Table." It strains the imagination to assert that someone designing such a table from scratch would ineluctably choose a yellow border, a masonite top of Vaughan's color, a black frame, and various brass pieces in the shapes that Vaughan uses, or that one seeking to buy a folding picnic table would necessarily prefer such a table over all others.

A similar case to the present one is *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71 (2nd Cir.1985). There, LeSportsac sold a line of lightweight nylon luggage and bags. K Mart argued that certain design features were functional, and thus not protectible. The court rejected an atomized approach:

[B]y breaking LeSportsac's trade dress into its individual elements and then attacking certain of those elements as functional, K Mart misconceives the scope of the appropriate inquiry. LeSportsac does not claim a trademark in all lightweight nylon bags using hollow zipper pulls or carpet tape trim. It claims as its mark the particular combination and arrangement of design elements that identify its bags and distinguish them from other bags.

754 F.2d at 76. Likewise, whether the configuration of a machine is functional or can receive trademark protection depends on whether its design as a whole is superior to other designs, not on whether its component features viewed individually each have a function. *Textron, Inc. v. U.S. International Trade Commission*, 753 F.2d 1019, 1026 (Fed.Cir.1985).

The district court in this case carefully limited the protectible trade dress to features of the table that were not essential to the overall function of the table: the yellow color of the table sides; the color of the masonite top; the black color of the frame; and the style, shape, and color of the lock, handle, label, and other brass parts. At the hearing, Vaughan brought forward evidence that other folding picnic table manufacturers had products that varied significantly from Vaughan's table with respect to these features. For example, the "Take-A-Long" table has a white border, a woodgrained top, and silver rivets, where Vaughan's (and Brikam's) parts are yellow, masonite, and brass, respectively.

The "Take-A-Long" table differed also as to the handle, lock, legs, and braces.

Brikam cut production costs by copying Vaughan's trade dress in one sense. Brikam copied a successful product lock, stock and barrel. No money was expended in determining which features were necessary to the function of the product. Such costs of information are not the sort of costs that the functionality defense protects. That would be incompatible with the rule that "One entering a field already occupied by another has a duty to select a trademark that will avoid confusion." *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980).

## IV

Finally, Brikam argues that a preliminary injunction should not have issued, because of a lack of irreparable harm to Vaughan. Brikam bases this argument solely on the fact that Vaughan did not take legal action against Brikam until April of 1985, although Brikam had been marketing its table since early 1984 and Vaughan had notice at the latest by July of 1984. That fact alone is not enough. "[D]elay is only one among several factors to be considered; these cases do not support a general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for a preliminary injunction." *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). Irreparable injury is readily found where one competitor employs the trademark of another. *Id.* at 1026. *Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983).

## V

For the reasons stated, the order of the district court granting the motion for a preliminary injunction is

AFFIRMED.