**SERVICE IDEAS, INC.,**
**Plaintiff-Appellee,**

v.

**TRAEX CORPORATION,**
**Defendant-Appellant.**

**No. 87–1980.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1988.
Decided May 13, 1988.

---

Donald L. Heaney, Isaksen, Lathrop, Esch, Hart & Clark, Madison, Wis., for defendant-appellant.

Malcolm L. Moore, Moore & Hansen, Minneapolis, Minn., for plaintiff-appellee.

Before CUMMINGS and HARLINGTON WOOD, JR., Circuit Judges, and WILL, Senior District Judge.

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

CUMMINGS, Circuit Judge.

Plaintiff Service Ideas, Inc. (Service Ideas) won its trade dress infringement suit against defendant Traex Corporation (Traex) and obtained a permanent injunction prohibiting Traex from using the trade dress of an insulated beverage server it manufactured that was confusingly similar to Service Ideas' trade dress. Service Ideas unsuccessfully sought attorneys' fees for prevailing in that action.

Traex subsequently moved the district court to declare that the trade dress of its new server was not confusingly similar to Service Ideas' trade dress. The court determined that Traex's new trade dress continued to be confusingly similar to plaintiff's trade dress and that Traex should be required to pay Service Ideas' reasonable attorneys' fees of $5,045.28 incurred in defending against Traex's motion. Traex appeals, asserting that (1) the design of its trade dress is functional, (2) its new trade dress is not confusingly similar to Service Ideas' trade dress, and (3) there was no basis upon which the district court could award reasonable attorneys' fees to Service Ideas for its efforts in resisting Traex's motion. We affirm in part and reverse in part for the reasons that follow.

I

We rely here on the statement of uncontested facts proffered by both parties and largely adopted by the court below. This is an action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for unfair competition based on Traex's alleged infringement of Service Ideas' trade dress. The suit therefore is subject to federal jurisdiction under 28 U.S.C. § 1338(a) regardless of diversity of citizenship, which incidentally does exist here.

Plaintiff Service Ideas is a Minnesota corporation with its principal place of business in Minneapolis. Defendant Traex, a wholly owned subsidiary of Menasha Corporation, is a Wisconsin corporation with its principal place of business in Dane, Wisconsin.

Service Ideas distributes an insulated beverage server to various restaurants and other institutions in the United States. This server is sold under the trademark THERMO–SERV. The THERMO–SERV beverage server currently distributed by Service Ideas is manufactured by Thermo–Serv, Inc., a Minnesota corporation not a party to this litigation. When Service Ideas began selling the insulated beverage server in 1955, the manufacturer was NFC Engineering, Inc. (NFC). Thermo–Serv is the successor-in-interest to NFC Engineering. Thermo–Serv, in addition to manufacturing the THERMO–SERV server for sale by Service Ideas, also manufactures the identical product under its own name and markets that product under the same trademark, i.e., THERMO–SERV. Thermo–Serv markets its THERMO–SERV beverage server only to the non-institutional market, according to its agreement with Service Ideas. The institutional market, comprised of hotels, restaurants, motels, and other institutions providing food service, has been reserved to Service Ideas. Service Ideas has marketed the THERMO–SERV beverage server to the food service institutional market for over thirty years. The shape and overall external appearance of the product have not changed in that entire period of time. Approximately two and a half million of these servers have been sold by Service Ideas. Also, Service Ideas has continuously displayed and promoted the THERMO–SERV beverage server at trade shows throughout the United States since at least 1959. It has advertised its server in various trade magazines, distributor catalogs and flyers and in its own brochures and catalogs distributed throughout the country.

In 1958, Service Ideas filed a trademark registration application to register the mark THERMO–SERV for the insulated beverage server which it distributed in commerce. The THERMO–SERV beverage server next was patented under a design patent on March 31, 1959. The patent was granted for a term of fourteen years and has since expired. The trademark application was registered with the United States Patent and Trademark Office on April 7, 1959, as U.S. Trademark Registra-

tion No. 676,528. This registration was the subject of an agreement, dated June 22, 1965, between Service Ideas and NFC. This "Assignment Agreement" contained language regarding the rights reserved to Service Ideas and rights conveyed to NFC under the trademark "THERMO–SERV." NFC subsequently assigned the registration by warranty assignment to Service Ideas representing that it was sole lawful owner of the registration. This assignment concerned the quality control by Service Ideas and NFC.

The THERMO–SERV insulated beverage server incorporates a color scheme in which the central shell of the server is one color and in which the top portion, lid, handle, and base portion of the server are a common second color generally darker than the color of the central shell. This general color scheme is also shared by the other insulated beverage servers distributed into commerce by Rubbermaid Corporation, Cambro Corporation, Continental Carlisle Corporation, and Kin–Hip, Ltd. Most relevant, however, is that defendant Traex has adopted the identical combinations of colors used on the THERMO–SERV server.

In both 1978 and 1979, Traex distributed a beverage server made by Kin–Hip. This server has been sold in the United States since 1978, competing with the servers of the other distributors. The Kin–Hip beverage server is similar both in external shape and appearance to the server being marketed by Service Ideas. However, it incorporates visible differences in its external appearance, which include the following: the squared bottom as opposed to the fully rounded bottom of the THERMO–SERV server; the more straight side walls on the main body, as compared to the more rounded, bulbous shape of the THERMO–SERV server; the higher, more upwardly extending pouring lip or spout; the upwardly turned outer ends of the lid thumb rest and top of the handle; and the scalloped, finger-gripping indents on the handle. Traex ultimately dropped that product from its line because of the poor quality of the Kin–Hip server. Traex had a number of returns from customers both because the

seal joints on that server were poor and its handles frequently broke loose.

In 1985, Traex decided to manufacture its own insulated beverage server. It made its server identical in overall outward appearance to the THERMO–SERV server distributed by Service Ideas and Thermo–Serv. Traex actively manufactured and distributed this insulated beverage server prior to this suit. This server is marked on its bottom clearly with the name "Traex" and does not bear either the words "THERMO–SERV" or "Service Ideas."

When the deadline for producing graphic and photographic material for the 1986 Traex catalog was near, Traex had not yet produced any of its servers. Traex purchased one of each color combination of insulated beverage server made by Service Ideas from Kessenick's, a Service Ideas' dealer in Madison, Wisconsin, and then photographed them. This color group photograph later was printed on page 13 of the Traex 1986 Commercial Products Catalog. Under its catalog display, Traex depicted the caption "Manufactured by Traex."

The servers actually sold by Traex were virtually identical to those pictured in its catalog. Traex adopted not only a color scheme the same as that on the Service Ideas THERMO–SERV beverage server, but also the identical combinations of all colors used on that server. To accomplish this, Traex broke paint chips off the THERMO–SERV containers which it purchased from Kessenick's and sent those chips as paint samples to various paint suppliers.

Traex also copied the overall external shape and appearance of the THERMO–SERV beverage server. It did this through purchasing the THERMO–SERV beverage servers and cutting them in half. Mr. Fred Salzmann, the Traex design engineer, used calipers and other devices to measure every dimension and radius on the THERMO–SERV servers. He then prepared drawings for molds and parts to produce servers virtually identical in overall appearance to that of Service Ideas.

Service Ideas filed this suit on May 9, 1986, against Traex and its parent, Menasha Corporation, alleging four counts in-

volving trademark and trade dress infringement, unfair competition, and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Wisconsin Revised Statutes §§ 100.18 and 100.20. These counts were based upon Traex's manufacturing and marketing a line of insulated beverage servers substantially identical in overall external appearance to those manufactured for Service Ideas, displaying photographs of the Service Ideas' servers in Traex catalogs and price sheets prior to Traex having its own full line of beverage servers available, and adopting the trademark "THERMEX SERVER," which was allegedly confusingly similar to Service Ideas' trademark "THERMO-SERV."

Through a motion for summary judgment by Menasha and Traex, Traex's changing its trademark and catalog photographs, and Service Ideas' waiver of monetary damages, Menasha was dismissed as a party to the suit and the action was tried to the district court only on the issue of trade dress infringement under Section 43(a) of the Lanham Act.

The court found that the THERMO-SERV server marketed exclusively to the institutional food-service industry by Service Ideas had obtained a secondary meaning, that the Traex server created a likelihood of confusion, and that the overall external appearance of the THERMO-SERV server was non-functional. The court then entered an order permanently enjoining Traex from incorporating the Service Ideas THERMO-SERV trade dress into its beverage server. This provided in part that:

IT IS ORDERED that judgment be entered in favor of the plaintiff, with costs.

IT IS FURTHER ORDERED that the defendant Traex Corporation shall not infringe or cause to be infringed the "THERMO-SERV" insulated beverage server trade dress of the plaintiff in any way.

IT IS FURTHER ORDERED that the defendant Traex Corporation, its agents, servants, employees, and all persons in active concert and participation with said defendant are hereby permanently enjoined and ordered to forthwith cease and desist from:

Incorporating the trade dress used by the plaintiff Service Ideas, Inc. on its "THERMO-SERV" insulated beverage server into the defendant's insulated beverage server or using such trade dress to sell, market, advertise or identify defendant's insulated beverage server, or selling or attempting to sell merchandise containing such trade dress or using such trade dress in any manner that imitates or is confusingly similar to the "THERMO-SERV" trade dress, or which otherwise indicates or tends to represent that the defendant Traex is in any way associated or affiliated with, authorized, sponsored, or approved by plaintiff Service Ideas, Inc., or causing, either directly or indirectly, such trade dress to be used, sold, marketed or advertised;

Preparing and circulating, or causing, directly or indirectly, to be prepared or circulated, catalogs, letters, literature, advertisements, price lists, and other promotional materials of any kind that exhibit the defendant's insulated beverage server incorporating the "THERMO-SERV" trade dress or having a trade dress that indicates or tends to represent that defendant is in any way associated or affiliated with, authorized, sponsored, or approved by Service Ideas, Inc.

Mem.Op. (W.D.Wis. April 9, 1987).

Traex later moved the district court to amend or modify its judgment under Rule 59(e) or 60(b)(6) to permit it to manufacture and market a "new" Traex server. On May 21, 1987, the court concluded that the "new" server was confusingly similar to the Service Ideas THERMO-SERV server because it did not maintain a "safe distance" from the margin line. The court also denied Traex's motion for relief under the judgment, and awarded $5,045.28 in reasonable attorneys' fees to Service Ideas for opposing that motion. We affirm the April 9, 1987, judgment. Except with respect to attorneys' fees, the May 21, 1987, order is also affirmed.

## II

### A. *Functionality*

Traex first argues that the design of the THERMO–SERV beverage server is functional and therefore the finding of non-functionality by the district court was clearly erroneous. A review of the controlling decisions and evidence of record in this case allegedly compels this conclusion, thus requiring reversal pursuant to Rule 52(a), Fed.R.Civ.P. We may determine that the non-functional finding is clearly erroneous only if this Court is left " 'with the definite and firm conviction that a mistake has been committed.' " *Cosby v. Ward*, 843 F.2d 967, 975 (7th Cir.1988) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518).

Functionality is the defense raised by Traex to Service Ideas' suit under Section 43(a) of the Lanham Act. In *Vaughan Mfg. Co. v. Brikam International, Inc.*, 814 F.2d 346 (7th Cir.1987), this Court stated:

> To achieve the status of "functional," a design or feature must be superior or optimal in terms of engineering, economy of manufacture, or accommodation of utilitarian function or performance.

*Id.* at 350. A functional feature is one which is shared by different brands that is costly not to have. *W.T. Rogers Co. v. Keene*, 778 F.2d 334, 339 (7th Cir.1985). Traex asserts that the design of Service Ideas is superior or optimal for both practical and aesthetic reasons. For Traex to differentiate its product allegedly would be to make it less attractive, less salable, and less acceptable to consumers. Service Ideas responds by claiming that the overall external appearance of its server has acquired a "secondary meaning," one which serves as a trademark to customers who mentally relate the shape of the server with Service Ideas. The district court, after examining the style, shape, color, handle, parts, lid, and spout of the server, determined that the design itself was nonfunctional and hence protectible. Our review of the record mandates a similar conclusion.

The practical use of a specific product must be taken into consideration in any functionality analysis. "A design feature of a particular article is essential only if the feature is dictated by the functions to be performed; a feature that merely accommodates a useful function is not enough." *LeSportsac, Inc. v. K–Mart Corp.*, 754 F.2d 71, 76 (2d Cir.1985). The various parts of a server individually may well be functional. The beverage server's receptacle, handle, lid, and spout are all essential features of a functioning server. The problem in this case, however, is that Traex has chosen to combine all of the above elements in an identical external design to that of the THERMO–SERV beverage server. There are other manufacturers of servers who distribute products different from Service Ideas', and Traex certainly could have incorporated the functional features of those articles to form a competitive item. But Traex chose not to. All of the evidence in this case, from Traex's photographing the THERMO–SERV product for use in the 1986 catalog to its copying the identical color schemes used by Service Ideas indicate an intent to duplicate the external design of plaintiff's product.

Traex tries to circumvent this conclusion by proffering a theory of "aesthetic" functionality, one which was elicited by its witnesses who testified as to the "attractiveness" of the THERMO–SERV server. We review here the propriety of the district court's weighing of the two competing interests: the public's interest in maintaining pleasing substitutes for known product brands with Service Ideas' interest in protecting its products' design from infringement. In *Rogers*, 778 F.2d at 340, we deferred to the trier of fact to make such a finding, and we do so here.

The district court in this case reviewed the testimony of witnesses for Traex who claimed both that a simpler server could not be designed and that the external appearance of the THERMO–SERV product was essential for proper competition in the relevant market. Yet as in *Vaughan*, relied on below, "[i]t strains the imagination to assert that someone designing such a table from scratch would ineluctably

choose a yellow border, a masonite top of Vaughn's color, a black frame and various brass pieces in the shapes that Vaughn uses, or that one seeking to buy a folding picnic table would necessarily prefer such a table over all others." 814 F.2d at 350. The same underlying reasoning about the particular elements of a beverage server guide our ultimate conclusion regarding functionality.

Traex could have adopted other functional features to distinguish its product from the THERMO–SERV server. It took the easier route by copying the exterior appearance of the Service Ideas' design, and accordingly, the district court's permanent injunction was properly granted.

### B. *Confusion*

We next decide whether the "new" Traex server was confusingly similar to the THERMO–SERV server. In its motion where it presented its new design, Traex sought clarification or modification of the district court's injunction. Cf. *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423 (7th Cir.1985). That court found that this new server was not "a safe distance from the margin line," *Independent Nail & Packing Co. v. Stronghold Screw Products*, 215 F.2d 434, 436 (7th Cir.1954), and accordingly held that because the modified Traex server was confusingly similar to the Service Ideas' product, there would be a likelihood of confusion among consumers if the Traex server were marketed. Traex contends that this issue's resolution depends on comparing three servers—the THERMO–SERV, the new Traex, and the Kin–Hip. Traex proposes that "if the Kin–Hip server is not confusingly similar to the THERMO–SERV server, then the new Traex server likewise is not confusingly similar. This is so because the new Traex server differs from the THERMO–SERV in the ways that the Kin–Hip server differs."

■ Examining Traex's new server, the district court in this case had substantial discretion to determine how close was "too close" to Service Ideas' product. *World's Finest Chocolate v. World Candies*, 409 F.Supp. 840, 844 (N.D.Ill.1976), affirmed,

559 F.2d 1226 (7th Cir.1977); see also *Inter. Kennel Club of Chicago, Inc. v. Mighty Star, Inc*, 846 F.2d 1079, 1087, (7th Cir.1988) (whether or not there is a likelihood of confusion is a question of fact). Traex had been previously enjoined from infringing the trade dress at issue and thus could not assert that its new design should be accorded the same leniency that a good faith user might ask for. McCarthy, *Trademark and Unfair Competition* 3013. Moreover, it had an ongoing duty to select a trade dress which would avoid all possibility of confusion. *Vaughan*, 814 F.2d at 351.

■ Traex attempted to comply with the permanent injunction by incorporating some of the trade dress elements of the Kin–Hip server, which product it originally had dropped due to quality complaints. It did this ostensibly due to the district court's earlier finding that the Kin–Hip article was easily distinguishable from the THERMO–SERV server. However, just because there was such a possible distinction does not mean that the likelihood of confusion would not still exist with Traex's new server.

Traex is correct in its assertion that the record of likelihood of confusion was scanty. Traex did have the increased burden to emphasize the distinctions it made in its new design pursuant to our decision in *Scandia Down Corp.*, 772 F.2d 1423. All Traex provided was a "mockup" and a photograph accompanied by the motion. After examining both, the district court concluded that "[t]he new server is too close to the boundary line."

The district court had previously viewed the wide array of insulated beverage servers in the marketplace, carefully observing the variety of styles, designs, and configurations of the distinctive external appearances. It certainly was in its discretion as the weigher of evidence to conclude that the new server incorporated the same general shape, external design, identical color schemes, and overall appearance as Traex's previous product. The proposed server did not incorporate all of the distin-

guishing Kin–Hip features; if it had done so, the result today might have been different. Our review of the lower court's decision in denying Traex's motion for reconsideration is governed by the abuse of discretion standard, *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246 (7th Cir. 1987), and we cannot say that the new product presented by Traex will avoid "all possibility of confusion," *Vaughan*, 814 F.2d at 351, with the trade dress of Service Ideas' beverage server.

## C. *Attorneys' Fees*

Traex's final argument concerns the district court's grant of reasonable attorneys' fees to Service Ideas on Traex's motion to permit it to manufacture, advertise, promote, and sell a new server. The court did not provide a reason for its award nor mention the authority therefor except to state that Traex failed to prepare a design which kept a "safe distance from the margin line." [1]

A similar scenario involving a district court's failure to articulate its rationale for a fee award appeared in this Circuit's decision in *Brown v. Federation of State Medical Boards*, 830 F.2d 1429 (7th Cir.1987). In *Brown*, the district judge found that the defendants were entitled to their attorneys' fees for defending against the second amended complaint that the plaintiff had filed. The plaintiff then appealed from the district court's order imposing sanctions against him under Rule 11 of the Federal Rules of Civil Procedure. The district court's order required him to pay the three defendants a total of $30,560.05 in attorneys' fees. Plaintiff argued on appeal that Rule 11 sanctions should not have been granted, and that even if it was proper for the district court to award sanctions, the court abused its discretion by granting such a large award. This Court held that the district court abused its discretion because the court, in its decision to award a substantial lump-sum payment to each of the defendants, did not provide sufficient specificity for the basis of its decision. Therefore, we concluded that the district court's findings were inadequate for appellate review. On remand, the court in *Brown* said that if the district court reimposed such a substantial sanction, it should state with some specificity both the reason for the imposition of the sanction and the manner in which it was computed.

In this case, the district court failed to disclose specifically the basis for its award of reasonable attorneys' fees to Service Ideas. The court did not determine that this was an "exceptional case" under 15 U.S.C. § 1117. "'Exceptional' cases where an award of fees would be justified were described as cases where the acts of infringement can be characterized as 'malicious,' 'fraudulent' 'deliberate,' or 'willful.'" *Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652, 657–658 (7th Cir.1981) (quoting H.R.Rep. 93–524, 93d Cong., 1st Sess., 2 (1973)). On the contrary, here the district court explicitly held "that this is not an exceptional case, the defendant deliberately and willfully infringing plaintiff's protectable [sic] trade dress" (Defendant's App. at p. 23). Moreover, there was no infringement in Traex's attempt to put its new server on the market, for the defendant approached the court before marketing its product. The district court, in ruling on Traex's motion, mentioned that it had declined to grant attorneys' fees in the case in chief because the question of functionality was close enough to remove it from the ambit of an "exceptional" case.

The only other theory to justify these attorneys' fees might be the court's *sua sponte* grant pursuant to Rule 11, Fed.R.

---

1. The district court stated:
   I don't believe that the defendant kept a safe distance from the margin line; and I am awarding costs to the plaintiff for the particular motion which was presented to the Court.

   \* \* \* \* \* \*

   But it just seems to me that this type of attempting to move in on the line should cease and that the Court believes that the previous findings of this Court were definitive in nature; that this attempt to find a million ways or two million ways, and I guess I keep going back to that language ad nauseam, just shouldn't occur. So I'm going to award costs [and attorneys' fees] of the instant motion. I'm denying fees for the action as I have previously stated.
   (Defendant's App. at 24).

Civ.P. "The decision as to whether there has been a violation [of Rule 11] is a judgment call," *Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1036 (7th Cir.1988), and we ordinarily defer to a district court's finding on the matter. See *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 751 (7th Cir.1988). Yet the court's failure in this case to offer any explanation for the award is clearly an abuse of discretion under our recent decision in *Brown*. District courts must provide specific findings when awarding substantial compensatory sanctions.

Generally, it would be appropriate to remand the issue of fees or sanctions back to the district court if an award is not specifically justified as commanded in *Brown*. However, in this case, the defendant's conduct was clearly reasonable and remanding on this issue would only serve to further delay this case, harass both parties and increase the cost of the litigation. Indeed, a remand would likely result in a second appeal whatever the district court decided. Surely this would not serve the "goal of efficient judicial administration." *Brown*, 830 F.2d at 1440. There are no disputed facts as to the nature of Traex's conduct and deciding on appeal that the conduct was reasonable is appropriate and prudent.

Without selling the second product, which it believed beyond the district court's injunction, Traex nevertheless moved the district court to examine its product with respect to the injunction. On appeal, counsel for both parties displayed their beverage servers and those of other manufacturers which have not been challenged by Service Ideas. It was only after probing counsel to demonstrate the material characteristics of the servers and careful consideration that we were satisfied that the district court had properly found the second server not to be "a safe distance from the margin line; . . . ." Interestingly, the court denied Service Ideas' motion for fees in its original action. Although not controlling, the court's earlier ruling is indicative of the fact that infringement was, and remains, a close call.

Under Rule 11, a district court must make "an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown*, 830 F.2d at 1435. Conduct is unreasonable if it is "frivolous," because an attorney did not make a "reasonable inquiry into the facts" or "the law" of the case, or "improper," because it is designed to delay, harass or increase the cost of litigation. *Id.* at 1435–1436; Fed.R.Civ.P. 11.

Given these guidelines, Traex's conduct in issue was not only reasonable, but prevented further delay, harassment and litigation costs. A reasonable inquiry was made into the facts and law of this case for Traex produced a beverage server which incorporates features from the Kin–Hip server, a product which the district court found dissimilar from and not infringing of the THERMO–SERV. If Traex had manufactured and sold its new product before seeking approval from the district court, Service Ideas undoubtedly would have sought enforcement of its injunction and sanctions might have been appropriate. In addition, further damages, resulting from the manufacture, distribution, marketing and sale of the product, involving other parties, probably would have been incurred.

Traex, however, submitted a product which was different from its infringing product and incorporated some features, but not all, of a non-infringing product (the Kin–Hip server). While Traex's new product was ultimately found to be too similar to Service Ideas', its conduct in modifying its original product to distinguish it from the plaintiff's and presenting the second product for prior court approval was reasonable and should preclude Rule 11 sanctions or fees.

The district court's decisions concerning the trade dress of both Traex products are affirmed. The order awarding the attorneys' fees is reversed.