**ARKANSAS BEST CORPORATION, a Delaware corporation, and ABF Freight System, Inc., a Delaware corporation, Plaintiffs,**

v.

**CAROLINA FREIGHT CORPORATION, a North Carolina corporation, and Landon C. Ford, III, Defendants.**

No. 3:99CV63.

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 26, 1999.

W. Thad Adams, III, Charlotte, NC, for Arkansas Best Corporation, ABF Freight System, Inc., plaintiffs.

Clifton Ted Hunt, Charlotte, NC, for Carolina Freight Corporation, Landon C. Ford, III, defendants.

## ORDER OF PRELIMINARY INJUNCTION

RICHARD L. VOORHEES, District Judge.

THIS MATTER is before the Court on Plaintiffs' Motion for Preliminary Injunction filed March 18, 1999. On April 20, 1999, the Court held a hearing in this matter at which the parties presented arguments. After having carefully considered the parties' arguments and employed the hardship balancing test articulated by the United States Court of Appeals for the Fourth Circuit in *Blackwelder Furniture Co. of Statesville, Inc. v. Seiling Manuf. Co.*, 550 F.2d 189 (4th Cir.1977), the Court finds that Plaintiffs would suffer greater harm if equitable relief were denied than Defendants would suffer if equitable relief were granted; that Plaintiffs are likely to succeed at the trial of this action on the merits; and that the public interest favors the entry of a preliminary injunction.

## STATEMENT OF FACTS

In the 1930's, C. Grier Beam founded a trucking company in Cherryville, North Carolina, named Beam Trucking Company. Shortly thereafter, Mr. Beam merged Beam Trucking Company with another local trucking company to form Carolina Freight Carriers Corporation, a North Carolina corporation chartered on February 25, 1937. Carolina Freight began identifying its trucking and freight services with the names "Carolina" and "Carolina Freight" in 1937.

After nearly 45 years of consistent use of the names "Carolina" and "Carolina Freight" to identify Carolina Freight Carriers and its services, Mr. Beam formed a North Carolina corporation named Carolina Freight Corporation on August 30, 1982. This corporation was the original Carolina Freight Corporation, to be distinguished from the defendant in this action. In following years, Carolina Freight Corporation applied for and received federal registrations for its service marks "Carolina" and "Carolina Freight."

On May 11, 1995, the original Carolina Freight Corporation changed its corporate name to WorldWay Corporation ("WorldWay"), continuing to use "Carolina" as its service mark. On September 24, 1995, Carolina Freight Carriers was merged into ABF Freight System, Inc. ("ABF"). Subsequently, on June 30, 1997, WorldWay was merged into Arkansas Best Corporation ("Arkansas Best"). As a result of these mergers, the goodwill and service marks of Carolina Freight Carriers and WorldWay were transferred to Plaintiffs herein. Therefore, Plaintiffs own all rights in the federally registered service marks "Carolina" and "Carolina Freight."

To date, Plaintiffs continue to use the mark "Carolina" and/or "Carolina Freight." Specifically, 5641 trailers owned by Plaintiffs conspicuously bear the mark "Carolina." These trailers comprise a substantial portion of the ABF fleet.

On September 3, 1997, two months after WorldWay was merged into Arkansas Best, Defendant Landon C. Ford, III—a former employee of Carolina Freight Carriers—formed a North Carolina corporation named "Carolina Freight Corpora-

tion" to market interstate trucking and freight services. According to Plaintiffs, Defendants not only display the "Carolina Freight" logo on its vehicles and promotional materials, but also have employed a marketing strategy based on the notion that Defendants were bringing the "Carolina" and "Carolina Freight" names back to the Cherryville area. Indeed, Defendants marketing strategy attracted the attention of the media including the *Charlotte Observer* and *Lincoln Times–News*. Moreover, Defendants have registered "carolinafreight" as their World Wide Web domain name, thereby obtaining ownership of the World Wide Web address "www.carolinafreight.com."

Defendants argue that they do not use the marks "Carolina" and "Carolina Freight." Instead, Defendants assert that they use the full corporate name "Carolina Freight *Corporation*" on its "trailers and elsewhere" to identify the source of its services. According to Defendants, the word "Corporation" clearly distinguishes Defendants' trade name from Plaintiffs' services marks and avoids any likelihood of confusion between the two. Moreover, Defendants assert that they have the right to use the name "Carolina Freight Corporation" because the original Carolina Freight Corporation abandoned the name in 1995 when it changed its name to WorldWay Corporation.

## DISCUSSION OF LAW

■ The Court employs a hardship balancing test to determine whether to issue a preliminary injunction. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir.1991). The following factors must be considered in making the Court's determination: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Id.* The plaintiffs bear the burden of establishing that each of the factors supports the issuance of equitable relief. The foregoing

balancing test involves a 'sliding scale' analysis: 'the greater the plaintiffs' chance of success on the merits, the less strong a showing they must make that the balance of harm tips in their favor. *Mayflower Transit, Inc. v. Ann Arbor Warehouse, Co.*, 892 F.Supp. 1134 (S.D.Ind.1995). Alternatively, as the balance of harm tips away from the plaintiffs, a stronger showing of likelihood of success on the merits is required. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991).

■ The Court's discussion begins with the first factor because Plaintiffs' motion cannot be granted until they make "a clear showing of irreparable harm." *See Direx Israel*, 952 F.2d at 812 (failure to make such a clear showing of irreparable is by itself a sufficient ground upon which to deny a preliminary injunction) (*quoting Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987)). The Court need not balance the hardships of the parties unless Plaintiffs make the threshold showing that it is likely to suffer irreparable harm if the Court fails to grant the requested equitable relief. As explained below, Plaintiffs have made a more than satisfactory showing in the instant case.

As delineated above, Plaintiffs operate 5,641 trailers that display Plaintiffs' "Carolina" and "Carolina Freight" logos and marks. Defendants operate similar vehicles displaying Plaintiffs' "Carolina" and "Carolina Freight" marks without Plaintiffs' authorization. In addition, Defendants employ the "Carolina" and "Carolina Freight" marks in their advertising and promotions. In sum, Defendants' conduct constitutes an attempt to palm off and usurp the goodwill of Plaintiffs. The Court finds that Defendants' conduct is certain to injure Plaintiffs' business for the following reasons. First, the fact that Plaintiffs continue widespread, prominent use of several thousand trailers conspicuously marked with the "Carolina" service mark leaves Plaintiffs particularly vulnerable to business risks, including the possibility of being accused and/or sued for

wrongs allegedly committed by Defendants. Second, Plaintiffs are likely to be mistakenly identified as Defendants in credit and collection efforts. Third, Plaintiffs are likely to receive misdirected mail and/or telephone calls intended for Defendants. In short, given the fact that both parties engage in interstate trucking and employ virtually identical service marks, it is reasonable to conclude that the consuming public would be confused as to the source of goods or services rendered.

Although Defendants are certain to suffer harm upon the Court's entry of a preliminary injunction, the Court finds that such harm is *de minimus* compared to the harm Plaintiffs would suffer absent the issuance of equitable relief. Unlike Plaintiffs' business which was begun in the 1930's, Defendants' business was incorporated only recently. In fact, Carolina Freight Corporation began its operations less than one year ago. Accordingly, Defendants have not had an opportunity to amass a large fleet of vehicles or a large quantity of promotional materials bearing Plaintiffs' marks. Therefore, it would not be unduly burdensome for Defendants to remove Plaintiffs' registered marks from its vehicles and promotional materials. Based on the foregoing, the Court finds that: (1) Plaintiffs have demonstrated that they are likely to suffer irreparable harm absent immediate equitable relief; and (2) that the balance of harm tips heavily in favor of Plaintiffs.

■ Moreover, the Court finds that Plaintiffs have shown a strong likelihood of success on the merits. This factor is heavily influenced by the fact that the instant suit alleges trademark infringement. United States Courts of Appeal have long held that prima facie proof of trademark infringement, by its nature, raises a presumption of injury and harm. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1240 (3d Cir.1983); *Vaughan Mfg. Co. v. Brikam Intern., Inc.*, 814 F.2d 346, 351 (7th Cir. 1987); *Processed Plastic Co. v. Warner Communications*, 675 F.2d 852, 858 (7th Cir.1982); *Service & Training, Inc. v. Data General Corp.*, 963 F.2d 680, 690 (4th Cir.1992) (copyright). In addition, the public interest factor of the balance of hardships test is influenced by a prima facie showing of infringement. Permitting continued infringement of a competitor's mark does not serve the public interest.

### ORDER

IT IS, THEREFORE, ORDERED that Plaintiffs' Motion for a Preliminary Injunction is GRANTED. Pending a trial on the merits, Defendants, their officers, directors, employees, agents, or any other persons in active concert or participation with Defendants and each of them and their successors and assigns are hereby ENJOINED from:

1. Using the CAROLINA or CAROLINA FREIGHT marks or any colorable imitation, facsimile, counterfeit, copy, or derivative thereof on motor vehicles and motor vehicle accessories, including but not limited to trucks, trailers, and other towed vehicles, vans, cars, cabs, and mud flaps;

2. Using the CAROLINA or CAROLINA FREIGHT marks or any colorable imitation, facsimile, counterfeit, copy, or derivative thereof on the Internet, including but not limited to sites on the World Wide Web;

3. Using the CAROLINA or CAROLINA FREIGHT marks or any colorable imitation, facsimile, counterfeit, copy, or derivative thereof in domain names on the World Wide Web;

4. Using the CAROLINA or CAROLINA FREIGHT marks or any colorable imitation, facsimile, counterfeit, copy, or derivative thereof on any promotional paraphernalia or memorabilia, including but not limited to brochures, clothing, and headgear;

5. Using the CAROLINA or CAROLINA FREIGHT marks or any colorable imitation, facsimile, counterfeit, copy, or derivative thereof on internal and external business documents, including but not limited to letterhead, envelopes, business cards, and memoranda;

6. Using the CAROLINA or CAROLINA FREIGHT marks or any colorable imitation, facsimile, counterfeit, copy, or derivative thereof in any other advertising or promotional efforts;

7. Using the CAROLINA or CAROLINA FREIGHT marks or any colorable imitation, facsimile, counterfeit, copy, or derivative thereof as an indication of the source or origin of goods or services;

8. Performing any acts or activities calculated to trade upon the CAROLINA or CAROLINA FREIGHT marks or any colorable imitation, facsimile, counterfeit, copy, or derivative thereof, or the reputation or goodwill of Plaintiffs; and

9. Engaging in any unfair competition with Plaintiffs.

IT IS FURTHER ORDERED that Defendants shall take all necessary steps to cancel and revoke their registration of "carolinafreight" as a domain name on the World Wide Web, including the transmission of a copy of this Order to Network Solutions, Inc.

IT IS FURTHER ORDERED that Defendants shall file with this Court and serve on Plaintiffs within thirty (30) days after the service of this Order, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with this injunction.

IT IS FURTHER ORDERED that Plaintiffs deposit a security in the amount of $ 100.00 in accordance with Rule 65(c) of the Federal Rules of Civil Procedure.